Anoush Hakimi (SBN 228858)
anoush@handslawgroup.com
Peter Shahriari (SBN 237074)
peter@handslawgroup.com
Ani Avetisyan (SBN 266679)
ani@handslawgroup.com
Laura Steven (SBN 332168)
laura@handslawgroup.com
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028
Telephone: (888) 635-2250
Facsimile: (213) 402-2170

Attorneys for Plaintiff,
**JAMES SHAYLER**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SHAYLER, an individual,<br><br>    Plaintiff,<br><br>  v.<br><br>B-K INGLEWOOD PROPERTY, LLC, a California limited liability company; CONTINENTAL CURRENCY SERVICES, INC., a California corporation; and DOES 1-10,<br><br>    Defendants. | Case No. 2:20-cv-09172-DMG-GJS<br><br>Hon. Dolly M. Gee<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181, *et seq.***<br><br>DEMAND FOR JURY TRIAL |

Plaintiff James Shayler (hereinafter referred to as "Plaintiff") complains of Defendants B-K Inglewood Property, LLC, a California limited liability company; Continental Currency Services, Inc., a California corporation; and Does 1-10 (each, individually a "Defendant," and collectively "Defendants"), and alleges as follows:

## I.    PARTIES

1.     Plaintiff James Shayler had two knee replacement surgeries which did not go well.  The surgeries resulted in him having severe pain in his knees and caused his legs to become very weak.  He has a pinched sciatic nerve that runs down his lower back and down his left leg.  The pinched sciatic nerve causes his left leg to give out sporadically.  He occasionally loses balance when his left leg gives out.  He also has neuropathy affecting the bottom of his feet.  This causes a burning sensation in his feet.  He has spinal arthritis, spinal stenosis, spondylosis, and a herniated disk.  He experiences severe back pain on a regular basis.  He feels sciatica nerve pain in his left hip, which also causes him to limp.  He has difficulty walking and standing and relies on a cane or walker for mobility.  He also suffered an injury back when he was a firefighter that required surgery on his left arm.  He has limited use of his left arm and hand.  He cannot put much pressure on his left arm and hand.  His left hand has atrophied.  Plaintiff is a disabled person entitled to the protections of the Americans with Disabilities Act (ADA) (*see* 42 U.S.C. § 12102, *et seq.*), and other statutory laws which protect the rights of "disabled

FIRST AMENDED COMPLAINT

persons."  Plaintiff has been issued a blue permanent Disabled Person Parking Placard by the State of California.  Plaintiff is a California resident with physical disabilities.

2.      Defendant B-K Inglewood Property, LLC, a California limited liability company, owned the property (the "Property") located at 2401 W. Manchester Blvd., Inglewood, CA 90305.

3.      There is a business establishment on the Property named "Continental Currency Services" (hereinafter, "the business").

4.      Defendant Continental Currency Services, Inc., a California corporation, owns/owned the business named "Continental Currency," and has/had control over its business at all relevant times.

5.      The business is a public accommodation as defined by 42 U.S.C. § 12181(7).

6.      DOES 1 through 10 were at all relevant times lessors, lessees, property owners, subsidiaries, parent companies, affiliates, employers, employees, agents, corporate officers, managers, principles, and/or representatives of Defendants. Plaintiff is unaware of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and, therefore, sues those Defendants by fictitious names.  Plaintiff requests that the Court grant leave to amend this complaint to allege the true names and capacities when determined by whatever source.

FIRST AMENDED COMPLAINT

7.     Defendants, at all relevant times, were relevant to this action; were the owners, franchisees, franchisors, lessees, lessors, general partners, limited partners, agents, affiliates, employees, employers, representative partners, subsidiaries, partner companies, and/or joint venturers of the remaining Defendants; and were acting within the course and scope of that relationship.  Upon information and belief, Plaintiff alleges that each of the Defendants gave consent to, ratified, and/or authorized the acts alleged of each of the remaining Defendants.

8.     Plaintiff visited the public accommodations owned, leased, and/or operated by Defendants with the intent to purchase and/or use the goods, services, facilities, privileges, advantages, and/or accommodations offered by Defendants.

## II.     JURISDICTION & VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) & (a)(4) for violations of the ADA.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the real property which is the subject of this action is located in this district, and Plaintiff's cause of action arose in this district.

## III.   FACTS

11.     The Property is a facility which is open to the public and includes a business establishment.

12.     The Property has been newly constructed and/or underwent remodeling, repairs, or alterations after January 26, 1992.  Defendants have failed

4

FIRST AMENDED COMPLAINT

to comply with the access standards which applied at the time of each new construction and/or alteration, and/or failed to maintain accessible features in operable working condition.

13.     Plaintiff visited the Property during the relevant statutory period on two (2) separate occasions, in December 2018 and September 2019, to patronize the business on the Property.

14.     Defendants did not offer persons with disabilities with equivalent facilities, privileges, and advantages offered by Defendants to other patrons.

15.     Plaintiff encountered barriers, both physical and intangible, that interfered with, and denied, Plaintiff the ability to use and enjoy the goods, services, privileges, and/or accommodations offered at the Property.

16.     Parking is one of the facilities, privileges, and advantages offered by Defendants to patrons of the Property.

17.     However, there was no accessible parking for disabled patrons at the Property.  The parking space designated for disabled persons did not comply with the ADA.

18.     The parking area did not comply with the applicable ADA Standards for Accessible Design, and/or the applicable California Building Code (CBC).

19.     When Plaintiff visited the Property, he experienced access barriers related to parking, signage, entrance(s), and path(s) of travel.

FIRST AMENDED COMPLAINT

20.    Plaintiff encountered the following barriers, conditions, and/or violations at the Property:

**VIOLATION of 1991 ADA Standards for Accessible Design (ADAS) § 4.3.2(1); 2010 ADAS § 206.2.1; 2010 CBC §§ 1114B.1.2, 1127B.1; 2019 CBC § 11B-206.2.1.** (Exterior route of travel.)  An accessible route of travel is not provided to all entrances and portions of the building, to all entrances to the property, and/or between the building and a public way.  Plaintiff needs a dedicated path of travel, free of obstructions and vehicles, where (on which) he can use his cane or walker.  It is dangerous for Plaintiff to navigate while using a cane or walker without a safe, protected, accessible route of travel; thus, the violation interferes with Plaintiff's ability to fully access the premises.

**VIOLATION of 1991 ADAS §§ 4.1.2(1), 4.3.2(1); 2010 ADAS §§ 206.1, 206.2, 206.2.1, 206.2.2, 206.2.4; 2010 CBC §§ 1114B.1.2, 1127B.1; 2019 CBC §§ 11B-206.2.1, 11B-206.2.2, 11B-206.2.4.** (Transportation – route of travel.)  An accessible route of travel must be provided within the property boundary connecting public transport zones, parking, passenger loading zones, and the public streets or sidewalks they serve, to the business

FIRST AMENDED COMPLAINT

entrance.  There is no accessible route connecting these elements for Plaintiff to travel.  No accessible route is provided within the property boundary from the designated disabled parking space to the building entrance.  The current route/path is via a public sidewalk not within the property boundary.  It is dangerous for Plaintiff to navigate while using a cane or walker without a safe, accessible route of travel.  The lack of an accessible route interfered (would interfere) with Plaintiff's ability to fully access the premises.

**VIOLATION of 2010 CBC § 1129B.4; 2019 CBC §§ 11B-502.8, 11B-502.8.2.**  (Off-street unauthorized parking sign.)  The tow away sign(s) (white sign(s) stating that "UNAUTHORIZED VEHICLES PARKED IN DESIGNATED ACCESSIBLE SPACES … WILL BE TOWED AWAY") must be posted in a conspicuous place at each entrance to an off-street parking lot (facility), or immediately adjacent to and visible from each designated parking stall (space).  The blank spaces are to be filled in with appropriate information regarding the tow company address and telephone number as a permanent part of the sign.  That information was not provided.  Plaintiff cannot access the business safely if he cannot use a designated disabled parking space which leads to an adjacent access aisle and an accessible route of travel protected from other vehicles.  Plaintiff needs to be

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

able to park in the space that is nearest to the entrance and designated for disabled patrons. Clear signage that explicitly warns of the consequences for improperly parking in the designated disabled parking space will deter others without disabilities from parking there.

**VIOLATION of 1991 ADAS § 4.6.2; 2010 ADAS § 208.3.1; 2010 CBC § 1129B.1; 2019 CBC § 11B-208.3.1.** (Minimize travel distance.)  The designated disabled parking space is not located on the shortest accessible route of travel from the parking facilities to an accessible entrance.  Plaintiff needs to be able to park in the space that is nearest to the entrance and designated for disabled patrons.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.2.; 2010 CBC §§ 1129B.3, 1129B.4; 2019 CBC §§ 11B-502.2, 11B-502.6.4.1, 502.6.4.2.** (Faded paint – designated disabled parking space lines.)  The striping and markings for the designated disabled parking stall and the loading/unloading access aisle are dilapidated and in need of repair and/or maintenance.  The paint used for the designated disabled parking space is so worn and aged that it cannot (can hardly) be seen.  The International Symbol of Accessibility was so faded and worn that it could barely be seen.  This makes it unclear

where the actual parking space is and makes it difficult for Plaintiff to park in the designated space. Plaintiff needs to be able to use an accessible parking space, with an adjacent access aisle, to safely access the Property. Clear signage that explicitly marks the designated disabled parking space(s) will deter others without disabilities from parking in the space(s). Plaintiff cannot access the business safely if he cannot use a designated disabled parking space which leads to an adjacent access aisle and an accessible route of travel protected from other vehicles. Plaintiff needs to be able to park in the space that is nearest to the entrance and designated for disabled patrons. If the space reserved for disabled patrons is not properly marked, then others without disabilities may park in the space.

**VIOLATION of 2010 ADAS § 502.2; 2010 CBC § 1129B.3; 2019 CBC § 11B-502.2.** <u>(Width of parking space.)</u> The designated disabled parking space is not wide enough. Car accessible parking stalls must be at least nine feet (9') wide. Plaintiff needs to be able to park in the designated disabled parking space, which should be located closest to the entrance and linked to an accessible route of travel, because it is more difficult for him, as opposed to individuals without disabilities, to maneuver about the Property.

FIRST AMENDED COMPLAINT

**VIOLATION of 2010 ADAS § 502.2; 2010 CBC § 1129B.3; 2019 CBC § 11B-502.2.** (Length of parking space.)  The designated disabled parking space measures less than eighteen feet (18') long, which makes it difficult for Plaintiff to park in the designated space.  Plaintiff needs to be able to park in the designated disabled parking space, which should be located closest to the entrance and linked to an accessible route of travel, because it is more difficult for him, as opposed to individuals without disabilities, to maneuver about the Property.

**VIOLATION of 1991 ADAS §§ 4.5.2, 4.6.8; 2010 ADAS §§ 303.1, 303.2, 303.3, 303.4; 2010 CBC §§ 1133 B.7.1, 1133B.7.4; 2019 CBC §§ 11B-303.1, 11B-303.2, 11B-303.3, 11B-303.4, 11B-303.5.** (Route/path from parking – uneven surface.)  The path of travel from the designated disabled parking space to the business entrance is through/via the public sidewalk which contains abrupt vertical edges and/or variations over 1/4 inch (and no ramp is provided).  The path of travel has damaged ground that is uneven and contains pavement distresses (i.e., the ground surface is not flush or flat).  Plaintiff, a cane or walker user, cannot fully enjoy the premises when such conditions are present.  These excess/abrupt changes in level pose risks to Plaintiff, including that he may trip and/or fall, and/or that his cane or walker

may catch on, or become trapped in, the uneven ground.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.4; 2010 CBC § 1129B.3.4; 2019 CBC § 11B-502.4.** (Slope of designated disabled parking space.) The designated disabled parking space has surface slopes greater than two percent (2%). Given his mobility issues, Plaintiff needs to be able to traverse on a level surface. Sloped ground surfaces pose risks to Plaintiff, including that his feet, cane, and/or walker may catch on the sloped ground, causing him to fall.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.4; 2010 CBC § 1129B.3.3; 2019 CBC § 11B-502.4.** (Slope of adjacent access aisle.) The loading/unloading access aisle adjacent to the designated disabled parking space has surface slopes greater than two percent (2%). Given his mobility issues, Plaintiff needs to be able to traverse on a level surface. Sloped ground surfaces pose risks to Plaintiff, including that his feet, cane, and/or walker may catch on the sloped ground, causing him to fall.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.3.2; 2010 CBC § 1129B.3; 2019 CBC § 11B-502.3.2.** (Length of adjacent access aisle.) The

loading/unloading access aisle (adjacent to the designated disabled parking space) was not long enough.  The access aisle(s) adjacent to the designated disabled parking space(s) shall extend the full length of the designated disabled parking space(s) it serves (a minimum of eighteen feet (18') long). Given his mobility issues, Plaintiff needs extra space to be able to safely exit his vehicle with his cane or walker.  When the access aisle is too small, Plaintiff has difficulty disembarking his vehicle and unloading his mobility device, which poses a greater risk of injury to him and can cause him humiliation and/or frustration.

**VIOLATION of 2010 ADAS § 502.3.3; 2010 CBC § 1129B.3.1; 2019 CBC § 502.3.3.**  (<u>"NO PARKING" – ground surface sign.</u>)  The words "NO PARKING," which are required to be painted in the adjacent loading/ unloading access aisle, are faded and cannot (can barely) be seen/read.  As a result, non-disabled patrons park in the space adjacent to the designated disabled parking space, blocking Plaintiff from being able to safely disembark from his vehicle.  Cars and trucks park or block the access aisles because the required lettering cannot clearly be read.  Plaintiff requires extra space to be able to safely exit his vehicle and unload his mobility device(s). When an access aisle is not available for him to use, Plaintiff has difficulty

disembarking his vehicle, which poses a greater risk of injury to him and can cause him humiliation and/or frustration.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.3; 2010 CBC § 1129B.3; 2019 CBC § 11B-502.3.** (Access aisles must adjoin accessible route.) The adjacent loading/unloading access aisle must adjoin an accessible route to an accessible entrance. It does not. Plaintiff cannot access the Property safely unless the access aisle is connected to an accessible, protected route. Plaintiff requires a parking space located nearest to the business entrance, with an adjacent access aisle that adjoins an accessible, protected route, so that he can safely travel to the business entrance. It is dangerous for Plaintiff to navigate while using his cane or walker without a safe, protected, accessible route of travel; thus, the violation interferes with Plaintiff's ability to fully access the premises.

**VIOLATION of 1991 ADAS § 4.1.2(7); 2010 ADAS § 216.6; 2010 CBC § 1127B.3; 2019 CBC § 11B-216.6.** (Directional signage.) There is no International Symbol of Accessibility (ISA) sign at the front entrance to the business. There is no directional signage showing an accessible path of travel to an accessible entrance. Plaintiff, a cane and/or walker user, faces an

13

FIRST AMENDED COMPLAINT

increased risk of injury if he is required to backtrack because he cannot find

an accessible entrance into the business.  Thus, he requires clear signage

directing him to the accessible entrance(s).  Accessible entrances should be

marked with an ISA.

21.    Plaintiff personally encountered the foregoing barriers, conditions,

and/or violations.

22.    These barriers, conditions, and/or violations denied Plaintiff full and

equal access, and caused him difficulty, humiliation, and/or frustration.

23.    The barriers, conditions, and/or violations existed during each of

Plaintiff's visits in December 2018 and September 2019.

24.    Furthermore, although Plaintiff did not personally encounter all of the

following barriers, conditions, and/or violations, Plaintiff is informed that the

following barriers, conditions, and/or violations, which affect access for mobility-

impaired cane or walker users like him, remain at the Property:

**VIOLATION of 1991 ADAS § 4.3.7; 2010 ADAS § 403.3; 2019 CBC §**

**11B-403.3.**  (Cross slope of route(s) of travel.)  The cross slope of walking

surfaces shall not be steeper than two percent (2%).  The public sidewalk

(i.e., the only path of travel to the building entrance) has cross slopes that are

steeper than two percent (2%).  Given his mobility issues, Plaintiff needs to be able to traverse on a flat, level surface so that he can fully access the premises.  The sloped ground surface poses risks to Plaintiff, including that his feet, cane, and/or walker may catch on the ground that is not level, causing him to fall.

**VIOLATION of 1991 ADAS § 4.13.8; 2010 ADAS § 404.2.5; 2019 CBC §§ 11B-404.2.5.**  (Front door entrance threshold and weather strip changes in level.)  The front door entrance threshold and weather strip at the business has changes in level greater than one-half inch (1/2") but no ramp is provided.  This makes traversing this area difficult because it forces Plaintiff to step higher (raise his feet/legs more), and/or lift his cane or walker higher, and presents a risk that Plaintiff's cane, walker, and/or feet may catch on the uneven surface.

25.    Upon information and belief, Plaintiff alleges that Defendants had actual knowledge that the foregoing architectural barriers prevented access, and that their noncompliance with the ADA Standards for Accessible Design (ADAS), ADA Accessibility Guidelines for Buildings and Facilities (ADAAG), and/or the California Building Code (CBC) was intentional.

26.     Plaintiff intends and plans to visit the Property again soon.  Currently, Plaintiff is reasonably deterred from returning to Defendants' public accommodation facilities because of the knowledge of barriers to equal access, relating to Plaintiff's disabilities, that continue to exist at the Property.

27.     Defendants have failed to maintain in working and useable condition those features necessary to provide ready access to persons with disabilities.

28.     Defendants have the financial resources (i.e., financial ability) to remove these barriers without much expense or difficulty in order to make the Property more accessible to their mobility impaired customers (i.e., disabled persons).  The removal of these barriers is readily achievable.  The United States Department of Justice has determined that removal of these types of barriers is readily achievable.

29.     Defendants refuse to remove these barriers.

30.     On information and belief, Plaintiff alleges that Defendants' failure to remove these barriers was/is intentional, because the barriers are logical and obvious.  During all relevant times, Defendants had authority, control, and dominion over these conditions.  Thus, the absence of accessible facilities was/is not a mishap; it was/is the result of intentional actions or inaction.

31.     These barriers to access are described herein without prejudice to Plaintiff citing additional barriers to access after further inspection by Plaintiff's

FIRST AMENDED COMPLAINT

agents and/or experts.  *See Doran v 7-ELEVEN, Inc.,* 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, a plaintiff can sue to have all barriers that relate to his or her disability removed, regardless of whether he or she personally encountered them).

## IV.  VIOLATION OF THE

## AMERICANS WITH DISABILITIES ACT OF 1990

## (42 U.S.C. § 12101, *et seq*.)

(Against All Defendants)

32.    Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

33.    Title III of the ADA prohibits discrimination against any person, on the basis of disability, in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation, by any person who owns, leases, or operates a place of public accommodation.  42 U.S.C. § 12182(a).

34.    Defendants discriminated against Plaintiff by denying him "full and equal enjoyment" and use of the goods, services, facilities, privileges, and/or accommodations they offered, during each visit, and each incident of a deterred visit.

35.    The acts and omissions of Defendants herein were/are in violation of

Plaintiff's rights under the ADA and the regulations codified at 28 C.F.R. Part 36, *et seq.*

36.     Pursuant to the ADA, discrimination is a "failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."  42 U.S.C. § 12182(b)(2)(A)(ii).

37.     The ADA requires removal of architectural barriers in existing facilities where such removal is readily achievable.  42 U.S.C. § 12182(b)(2)(A)(iv) ("discrimination includes … a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, … where such removal is readily achievable").  The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).  Barriers are defined by reference to the ADA Standards for Accessible Design (ADAS), found at 28 C.F.R. Part 36, including the ADA Accessibility Guidelines for Buildings and Facilities (ADAAG), at 28 C.F.R. Part 36, Appendix A.

38.     If removal of any barrier is not readily achievable, a failure to make

goods, services, facilities, or accommodations available through alternative methods is also prohibited if the alternative methods are readily achievable.  42 U.S.C. § 12182(b)(2)(A)(v).

39.    Defendants can remove the architectural barriers at their facility without much difficulty or expense.  Defendants violated the ADA by failing to remove the barriers because removal was readily achievable.  For instance, there are companies which can repaint parking areas for as little as $350.  Defendants can afford such costs, which are a fraction of what Defendants receive in (rental or business) profits in connection with such a large and expensive property.

40.    Alternatively, if it was not "readily achievable" for Defendants to remove barriers at their facilities, Defendants violated the ADA by failing to make their services available through alternative methods which are readily achievable.

41.    On information and belief, Plaintiff alleges that the facility was altered after January 26, 1992, mandating compliance with accessibility requirements under the ADA.

42.    The ADA requires that facilities altered in a manner that affects or could affect their usability must be made readily accessible to individuals with disabilities to the maximum extent feasible.  42 U.S.C. § 12183(a)(2).

43.    Defendants altered the facilities at the Property in a manner that violated the ADA, and/or failed to make the Property readily accessible to

physically disabled persons to the maximum extent feasible.

44.     The ADA also requires reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.  42 U.S.C. § 12182(b)(2)(A)(ii).

45.     Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Property when these modifications were necessary to afford (and would not fundamentally alter the nature of) the goods, services, facilities, privileges, advantages, or accommodations.

46.     Here Defendants' failure to make sure that accessible facilities were available to, and ready to be used by, Plaintiff was/is a violation of law.

47.     Plaintiff would like to continue to frequent the Property, which is located within ten (10) miles of his home.  However, he is deterred from doing so because he has been discriminated against and is aware of accessibility barriers at the Property.

48.     Among the remedies sought, Plaintiff seeks an injunction order requiring compliance with the ADA, and remediation of the existing access violations (i.e., removal of the existing barriers) at the Property.

FIRST AMENDED COMPLAINT

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1. For injunctive relief compelling Defendants to comply with the Americans with Disabilities Act and remove access barriers (i.e., remediate violations) at the Property/business/facility.

2. Reasonable attorney fees, litigation expenses, and costs of suit, pursuant to 42 U.S.C. § 12205.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 12, 2021          THE LAW OFFICE OF HAKIMI & SHAHRIARI

                                        By:    /s/ Anoush Hakimi
                                               ANOUSH HAKIMI, ESQ.
                                               Attorney for Plaintiff James Shayler

FIRST AMENDED COMPLAINT